962 A.2d 1025

Deborah RANSOM, et al.

v.

John R. LEOPOLD, et al.

No. 2017, Sept. Term, 2007.

Court of Special Appeals of Maryland.

Dec. 30, 2008.

Michael J. Snider and Jason I. Weisbrot (Snider and Associates, LLC, on the brief), Baltimore, for appellant.

Michael W. Lord (Jonathan A. Hodgson, County Attorney, on the brief), Annapolis, for appellee.

Panel: SALMON, DEBORAH S. EYLER, GRAEFF, JJ.

EYLER, DEBORAH S., J.

In the Circuit Court for Anne Arundel County, Deborah Ransom and her adult daughter Tiffany Hancock, the appellants, sued John R. Leopold, County Executive of Anne Arundel County, James Teare, Sr., the Chief of the Anne Arundel County Police Department, and Anne Arundel County, the appellees, and an "Unnamed Police Officer," in an eight-count complaint.[1] All claims arose out of an incident that occurred on November 27, 2006, in which Officer Adam Hinson (apparently the "Unnamed Police Officer") shot and killed Ransom's pit bull dog. The appellees filed a motion to dismiss, which was granted in full, with prejudice.

Ransom and Hancock brought this appeal, in which they present three questions for review, which we have reordered and rephrased:

I. Did the circuit court err in ruling that they did not substantially comply with the notice provision of the Maryland Local Government Tort Claims Act?

---

1. In the caption of the complaint, one defendant is listed as:
 Anne Arundel County,
 Police Department Headquarters
 8945 Veterans Highway, Millersville
 The appellants take the position that this defendant is Anne Arundel County. The appellees take the position that it is the Anne Arundel County Police Department. It seems to us that, although not artfully described, the defendant is Anne Arundel County.

II. Did the circuit court err in denying their request for a good cause waiver of the notice requirement of the Maryland Local Government Tort Claims Act?

III. Did the circuit court err by granting the motion to dismiss as to their "claims of violations of Local Government Tort Claims Act, gross negligence and related claims"?

For the following reasons, we shall affirm the circuit court's judgment.

## FACTS AND PROCEEDINGS

The appellants allege that the following events took place on November 27, 2006, at Ransom's house in Edgewater, Anne Arundel County. Ransom called the police to report a suspicious vehicle parked near her house for several days. About an hour later, the "Unnamed Police Officer" responded to the call. For ease of discussion, we shall refer to Anne Arundel County Police Officer Adam Hinson in discussing the "Unnamed Police Officer."

Officer Hinson walked up to Ransom's door, stood on the front porch, and knocked. Hancock answered the door. Officer Hinson did not identify himself. Hancock went to get her mother. She left Officer Hinson standing on the front porch, with the front door open but a clear glass storm door closed in front of him. As Hancock went to get her mother, the family's dog approached the storm door. Officer Hinson opened the storm door and let the dog out. As the dog greeted him enthusiastically, the officer became frantic, retreated from the porch, and drew his service weapon. By then, Hancock and Ransom were at the door. They yelled for Officer Hinson to stop retreating and remain calm. He did not do so, however. Instead, he shot the dog in the back, killing him.[2]

---

2. Officer Hinson's version of these events, documented in police records that the appellants attached as exhibits to court filings, is completely different. He claims that when Hancock went to get Ransom,

On June 18, 2007, the Anne Arundel County Attorney received a letter, dated June 14, 2007, from counsel for the appellants, giving notice of claim under the Local Government Tort Claims Act ("LGTCA"), Md.Code (1974, 2006 Repl.Vol.), sections 5–301 *et seq.* of the Courts and Judicial Proceedings Article ("CJ"). Among other things, the letter stated that, "[u]pon information and belief, [Ransom and Hancock] sent notice within 180 days to Prince George's County. Immediately upon learning that the injury occurred in Anne Arundel County, [Ransom and Hancock] sent this letter as notice to Anne Arundel County." The appellants attached to the letter a copy of the complaint they intended to file.

On July 6, 2007, the appellants filed their complaint in the Circuit Court for Anne Arundel County. In a preface titled, "Exhaustion of Procedural Requirements," they alleged that their lawyer had sent notice of their claims to the County Attorney for Prince George's County, by certified mail, with a postmark of May 25, 2007. "On June 14, 2007, [their] counsel learned that the injury occurred in Anne Arundel County and promptly sent the notice of claims, with a copy of the complaint, to the County Attorney for Anne Arundel County." Acknowledging that the notice of claim was given to the Anne Arundel County Attorney outside the 180 days from injury requirement in CJ section 5–304(b), the appellants moved the court to entertain the suit nevertheless, because they had substantially complied with the notice requirement and/or there was good cause to waive the notice requirement and the appellees had not suffered prejudice from the delay in notice.

The complaint sets forth its counts, all of which are stated against all defendants. As Counts VII and VIII were voluntarily dismissed, six counts are operative for our purposes:

Count I Tortious Injury to Property;

---

she left the glass storm door slightly ajar. The pit bull dog came bounding to the storm door and, despite the officer's efforts to hold the door closed, pushed it open and then attacked him, biting him on several parts of his body. When he saw that the dog was about to attack him again, he shot at the dog's left shoulder, in an effort to stop him. The shot killed the dog.

Count II Intentional Infliction of Emotional Distress;

Count III Violation of Local Government Tort Claims Act;

Count IV Violations of Article III, sections 33 and 40 of the Maryland Constitution and Articles 8, 19, 24, and 26 of the Maryland Declaration of Rights;

Count V 42 U.S.C. Section 1983 Claim for Violations of the Fourth, Fifth, and Fourteenth Amendments to the Federal Constitution; and

Count VI Gross Negligence.[3]

The appellants demanded a jury trial. They did not request a hearing on the motions set forth in their complaint.

On July 31, 2007, the appellees filed a motion to dismiss on several grounds, with supporting memoranda of law, affidavits, and exhibits. As to all counts but Count V, they moved to dismiss on the ground that the claims were barred because the appellants had not given timely notice to the Anne Arundel County Attorney within 180 days, as required by CJ subsection 5–304(b). They argued with respect to County Executive Leopold and Chief Teare that none of the facts alleged were based on conduct on their parts and, to the extent they were sued on a *respondeat superior* theory of liability, neither one of them had taken office by the date of the incident. Both came into office after the incident.

The appellees further argued that the LGTCA does not create its own cause of action, as suggested in Count III; Article III, sections 33 and 40 of the Maryland Constitution and articles 8, 19, and 26 of the Declaration of Rights are not implicated in the rights allegedly violated in the incident; a claim for violation of article 24 of the Declaration of Rights merely "duplicates" the section 1983 claim in Count V; and the excessive force claim in Count V is "misplaced," because the only force used was against the dog, who did not have any federal constitutional rights that could be violated.[4]

---

3. The counts that were voluntarily dismissed were for first-degree assault and reckless endangerment.

4. The appellees also argued that the Anne Arundel County Police Department is not a legal entity capable of being sued. As explained

The exhibits attached to the appellees' motion to dismiss were a copy of the June 14, 2007 letter from the appellants' lawyer to the Anne Arundel County Attorney, marked "Received" on June 18, 2007; an affidavit by a legal secretary for the Office of Law asserting that a search of the office's records showed that there was no notice of claim from Ransom or Hancock or both from November 27, 2006, until receipt of the June 14, 2007 letter; and an affidavit by the assistant safety and insurance manager of the Risk Management Division of Anne Arundel County asserting that there was no notice of claim from Ransom or Hancock or both from November 27, 2006, until receipt of the June 14, 2007 letter. The appellees did not request a hearing on their motion to dismiss.

The appellants filed a timely opposition to the motion to dismiss. They argued that they substantially complied with the LGTCA notice requirement by sending their notice of claim to the Prince George's County Attorney; and that they had good cause for not strictly complying and the appellees did not suffer any prejudice as a result of the delay. They explained that "[a] law clerk in the [law] office working on the claims notice incorrectly believed that Prince George's was the county in which the injury occurred"; the section 1983 claim in Count V is not subject to the notice requirement of the LGTCA as to Anne Arundel County or Officer Hinson; it would be premature to dismiss the claims against County Executive Leopold and Chief Teare before discovery had taken place; the LGTCA indeed creates a cause of action; all of the provisions of the Maryland Constitution and Declaration of Rights relied upon in the complaint are implicated; and the section 1983 excessive force claim is not for force used against the dog but for force used against the appellants in taking their property (the dog).[5]

---

*supra* in footnote 1, the named defendant in this case is Anne Arundel County, not the Anne Arundel County Police Department.

**5.** The appellants also argued in their opposition that defendant "Anne Arundel Police" should be properly designated as "Anne Arundel County." As explained above, we agree.

The appellants' opposition makes reference to Exhibits A and B, but attaches only Exhibit B. The reference to Exhibit A suggests that it would contain the June 14, 2007 letter to the Anne Arundel County Attorney and perhaps the letter allegedly mailed on May 25, 2007, to the Prince George's County Attorney. In fact, neither the latter letter nor any envelopes nor any certified mail receipts for the alleged May 25 letter, or the June 14 letter, are in the record.[6] Exhibit B is a copy of the Anne Arundel County Police Department Incident Report for the November 27, 2006 encounter between Officer Hinson and the appellants and their dog and copies of six photographs, one of the interior of a vehicle and the rest of bite and other wounds to Officer Hinson's body.

The appellants did not request a hearing on the appellees' motion to dismiss.

The appellees filed a timely reply memorandum of law. They repeated most of the arguments they had made before and added that any claims against Anne Arundel County (if it is a defendant) are barred by governmental immunity. Two exhibits, both establishing the dates on which County Executive Leopold and Chief Teare took their offices, are attached to the reply memorandum.

On September 17, 2007, the court issued an order granting the appellees' motion to dismiss with prejudice. The order was docketed two days later, and this timely appeal followed. We shall include additional information as necessary to our discussion of the issues.

## STANDARD OF REVIEW

On appeal from a decision to grant a motion to dismiss for failure to state a claim upon which relief can be granted, " 'we must determine whether the complaint, on its face, discloses a legally sufficient cause of action.' " *Schisler v. State*, 177

---

6. Even though the May 25, 2007 letter was not made a part of the record, the appellants have included it in the record extract. The letter bears a blank signature line and is not marked certified mail.

Md.App. 731, 742–43, 938 A.2d 57 (2007) (quoting Md. Rule 2–
322(b)(2); *Fioretti v. Md. State Bd. of Dental Exam'rs,* 351
Md. 66, 72, 716 A.2d 258 (1998)). We " ' "determine whether
the trial court was legally correct, examining solely the suffi-
ciency of the pleading." ' " *Pendleton v. State,* 398 Md. 447,
459, 921 A.2d 196 (2007) (quoting *Ricketts v. Ricketts,* 393 Md.
479, 491–92, 903 A.2d 857 (2006) (quoting *Benson v. State,* 389
Md. 615, 626, 887 A.2d 525 (2005))). In doing so, "we accept
all well-pled facts in the complaint, and reasonable inferences
drawn from them, in a light most favorable to the non-moving
party." *Sprenger v. Pub. Serv. Comm'n of Md.,* 400 Md. 1, 21,
926 A.2d 238 (2007) (quoting *Converge Servs. Group v. Cur-
ran,* 383 Md. 462, 475, 860 A.2d 871 (2004)). "We will only
find that dismissal was proper ' "if the alleged facts and
permissible inferences, so viewed, would, if proven, nonethe-
less fail to afford relief to the plaintiff." ' " *Id.* (quoting
*Pendleton, supra,* 398 Md. at 459, 921 A.2d 196 (quoting
*Ricketts,* 393 Md. at 491–92, 903 A.2d 857)).

## DISCUSSION

### I.

*Substantial Compliance with Notice Provision
of the Local Government Tort Claims Act*

In *Thomas v. City of Annapolis,* 113 Md.App. 440, 688
A.2d 448 (1997), this Court explained:

The Local Government Tort Claims Act ... applies to all
suits against local governments arising from events occur-
ring on or after July 1, 1987. The LGTCA covers munici-
palities and counties and applies to "employees," as distin-
guished from the common law concept of public officials, and
it applies to all torts without distinction, including intention-
al and constitutional torts. Under the LGTCA, local gov-
ernments, except to the extent common law immunity is
incorporated, have no immunity from torts of their employ-
ees unless committed with "actual malice." Further, under
the LGTCA, the employees are immune from execution on

any judgment if they acted within the scope of their employment and without "actual malice."

*Id.* at 457–58, 688 A.2d 448 (footnote omitted).

■ CJ subsections 5–304(b) and (c) provide, in relevant part:

(b) *Notice required.*—Except as provided in subsections (a) [not here applicable] and (d) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.

(c) *Manner of giving notice.* . . .

(2) In Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county solicitor or county attorney.

(3) The notice shall be in writing and shall state the time, place, and cause of the injury.

The purpose of the LGTCA notice requirement is

"to protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation, *i.e.,* while the evidence was still fresh and the recollection of the witnesses was undiminished by time, 'sufficient to ascertain the character and extent of the injury and its responsibility in connection with it.' "

*Moore v. Norouzi,* 371 Md. 154, 167–68, 807 A.2d 632 (2002) (quoting *Williams v. Maynard,* 359 Md. 379, 389–90, 754 A.2d 379 (2000)).

The appellants contend the undisputed facts show that they substantially complied with the notice requirements of CJ section 5–304, and therefore the circuit court erred in granting

the appellees' motion to dismiss. They maintain that the facts as pleaded demonstrate that, by virtue of an error on the part of a law clerk, who (for reasons not explained) thought the injury occurred in Prince George's County, not Anne Arundel County, they mistakenly mailed a proper notice of claim to the Prince George's County Attorney on May 25, 2007. May 25, 2007 (a Friday) was exactly 179 days after the November 27, 2006 day of injury. They assert that, by mailing the notice of claim as they did to the Prince George's County Attorney, on May 25, 2007, they substantially complied with the notice and manner of notice requirements of CJ section 5–304.

The appellees respond that, contrary to the appellants' suggestion, the appellees do not concede that the notice of claim letter allegedly mailed to the Prince George's County Attorney on May 25, 2007, reached the Prince George's County Attorney's office by May 26, 2007—the 180th day after the injury. In any event, they argue, mailing a notice of claim letter to an altogether uninvolved county, whether timely or not, is not substantial compliance with the requirement of notice to the county against whom the claim is asserted. Until June 18, 2007, they had no notice of the appellants' claims, and one cannot substantially comply with a notice requirement by giving no notice.[7]

In *Moore, supra,* 371 Md. 154, 807 A.2d 632, the Court of Appeals held that tort claimants in two cases had substantially complied with the notice requirements of CJ section 5–304 when they did not give notice to the Montgomery County Executive, as prescribed by the LGTCA, but did give notice to that county's claims administrator, Trigon. Montgomery County had contracted with Trigon, a private company, to administer all tort claims against it. The county exercised tight control over Trigon's activities and authorized it to investigate and adjust claims, settle certain small claims, and directly access the county's risk management information

---

7. In the June 14, 2007 letter to the Anne Arundel County Attorney, counsel for the appellants gave notice of a claim against "Anne Arundel County," not against the Anne Arundel County Police Department.

system. Observing that "substantial compliance with the statutory requirements [of the LGTCA] may ... satisfy the statute where the purpose of the notice requirement is fulfilled," *id.* at 168, 807 A.2d 632, the Court reasoned:

> [W]here the tort claimant provides the local government, through the unit or division with the responsibility for investigating tort claims against that local government, or the company with whom the local government or unit has contracted for that function, the information required by § 5–304(b)(3) to be supplied, *who thus acquires actual knowledge within the statutory period,* the tort claimant has substantially complied with the notice provisions of the LGTCA. This test is fair and has the advantage of taking account of the reality of how tort claims actually are handled.

*Id.* at 178, 807 A.2d 632 (emphasis added). *See also Faulk v. Ewing,* 371 Md. 284, 808 A.2d 1262 (2002) (holding that claimant, who wished to pursue automobile negligence claim against the Town of Easton, substantially complied with notice requirements of CJ section 5–304 by giving timely notice of the claim to the town's insurer); *Condon v. Univ. of Md.,* 332 Md. 481, 496, 632 A.2d 753 (1993) (stating that substantial compliance is "such communication that provides ... 'requisite and timely notice of facts and circumstances giving rise to the claim'" (quoting *Conaway v. State,* 90 Md.App. 234, 246, 600 A.2d 1133 (1992))).

By contrast, in *White v. Prince George's County,* 163 Md. App. 129, 877 A.2d 1129 (2005), and most recently in *Wilbon v. Hunsicker,* 172 Md.App. 181, 913 A.2d 678 (2006), this Court has held that notices of claims that were made timely, *i.e.,* within 180 days, but were given to entities that had not been delegated claims-adjusting and investigating functions by the counties involved did not substantially comply with the notice requirements of CJ subsections 5–304(b) and (c). In *White,* an arrestee who intended to pursue tort claims against county police officers filed a police brutality complaint with the county police department's internal affairs division ("the IAD"). The IAD was not an entity responsible for investigating tort claims

against the county, there was no relationship between the IAD and the County Attorney, and an investigation that in fact was carried out by the IAD proceeded under an unrelated statute, the Law Enforcement Officers' Bill of Rights.

In *Wilbon*, the mother of a deceased arrestee submitted a timely (within 180 days of the injury) "Statement of Incident" to the predecessor body of what then became the Baltimore City Civilian Review Board. Much later, she submitted an untimely (beyond the 180–day requirement) "Notice of Intent to File Suit" to the Maryland State Treasurer, the Comptroller of the Treasury, and the Baltimore City Police Commissioner. It was not until one year after the decedent died that the attorney for his estate submitted a "Notice of Claim Form" to the City Solicitor for Baltimore City. We held that submitting these documents did not amount to substantial compliance with the CJ subsection 5–304(b) and (c) notice requirements (which for Baltimore City mandates notice to the City Solicitor).

Although the mother's "Notice of Intent to File Suit" itself provided notice of a claim, it was not sent to the designated individual: the City Solicitor. It also was sent a month to six weeks after the 180–day period expired. With regard to the mother's "Statement of Incident" to the Civilian Review Board, we relied on *White, supra*, to conclude that the document did not substantially comply with the LGTCA notice requirements-the complaint addressed police brutality and not tort claims, the mother did not give notice to an entity designated to investigate tort claims, and the investigation that ensued because of this mother's complaint differed from a tort claim investigation. *Wilbon, supra*, 172 Md.App. at 203–04, 913 A.2d 678 (quoting *White, supra*, 163 Md.App. at 147, 877 A.2d 1129).

In the case at bar, if we assume that a letter in fact was mailed by counsel for Ransom and Hancock to the Prince George's County Attorney's Office on May 25, 2007, and that the mailing of the letter and its contents conformed to all requirements of CJ subsections 5–304(b) and (c), except that it

should have been mailed to the Anne Arundel County Attorney, there was not substantial compliance with the LGTCA's notice requirements. As the cases discussed above illustrate, substantial compliance exists when timely notice has been given in a manner that, although not technically correct, nevertheless has afforded actual notice of the tort claim or claims to the local government. In all of those cases, the relationship between the person or entity in fact notified and the person or entity that the statute requires be notified was so close, with respect to the handling of tort claims, that notice to one effectively constituted notice to the other.

Here, the letter allegedly mailed on May 25, 2007, was not sent to any Anne Arundel County person or entity having anything to do with tort claims against that county. Indeed, it was sent to an entirely different county altogether. The May 25, 2007 letter was not a communication that provided requisite and timely notice of facts and circumstances giving rise to the appellants' claim to Anne Arundel County. It did not communicate anything to Anne Arundel County. Anne Arundel County did not acquire from that letter any knowledge of the tort claims the appellants intended to bring. Accordingly, the purpose of the LGTCA notice requirement was not satisfied by the May 25, 2007 letter. On the facts as pleaded in the complaint, the doctrine of substantial compliance does not apply.

## II.

### Good Cause Waiver of Notice Requirement of the Local Government Tort Claims Act

■ Subsection (d) of CJ section 5–304 authorizes a court to waive the notice requirements of subsections (b) and (c), as follows:

(d) *Waiver of notice requirement.*—Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause

shown the court may entertain the suit even though the required notice was not given.

A decision by a circuit court not to waive (or to waive) the notice requirements of CJ subsections 5–304(b) and (c) is discretionary and therefore is reviewed on appeal for abuse. *Rios v. Montgomery County*, 157 Md.App. 462, 482, 852 A.2d 1005 (2004).

The appellants contend the circuit court abused its discretion by denying the waiver request made in their complaint and made separately as well after the motion to dismiss was filed. They argue that the three weeks' late notice in this case was due to "excusable neglect" on the part of their counsel, which is "good cause"; and there was no showing by the appellees that they were prejudiced by the delay in notice. Therefore, the circuit court abused its discretion by not entertaining their suit notwithstanding the defect in notice.

The appellees respond that the reasons given by the appellants for the late notice amounted to inexcusable, not excusable, neglect, and therefore were not "good cause," and, in the absence of good cause, they were not required to make a showing of prejudice.

 "Good cause exists when a claimant prosecutes a claim 'with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.'" *Wilbon, supra*, 172 Md.App. at 205, 913 A.2d 678 (quoting *Heron v. Strader*, 361 Md. 258, 271, 761 A.2d 56 (2000)). Courts have considered the following factors generally to have been good cause: "' [1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), [2] serious physical or mental injury and/or location out-of-state, [3] the inability to retain counsel in cases involving complex litigation, ... [4] ignorance of the statutory notice requirement[,]'" or misleading representations made by representatives of the local government. *White*, 163 Md.App. at 152, 877 A.2d 1129 (quoting Heron, supra, 361 Md. at 272, 761 A.2d 56).

In *Moore, supra,* the Court held that the trial courts in both cases had abused their discretion by finding that the claimants had not shown good cause to support waiving the CJ section 5–304 notice requirements. In those cases, the claimants and their counsel had dealt directly with Trigon, Montgomery County's third party claims administrator. Applying an "ordinarily prudent person" standard, the Court concluded that the same acts and conduct that constituted substantial compliance with the notice requirements also supported waiver of the notice requirement. In both cases, the claimants had communicated directly with Trigon about their claims, soon after their accidents, were informed by Trigon that it was conducting an investigation, and maintained consistent contact with Trigon throughout the investigation and during medical treatment occasioned by the accidents. Because the claimants had acted with reasonable diligence in pursuing their claims, in a manner that effectively put Montgomery County on notice and allowed for investigation by it, and had given notice to Trigon only because Trigon had presented itself as being the proper entity to receive notice, there was good cause to waive the notice requirement. The Court further concluded that there had been no prejudice to Montgomery County, as it had all of the information it would have had, and conducted the same investigation it would have conducted, in the same time frame, had strictly compliant notice been given.

In the case at bar, counsel for the appellants asserts in their brief that the appellants did not act without diligence in prosecuting their claim. They obtained counsel and relied upon counsel to take the steps necessary to pursue the claim. Counsel argues that the appellants should not be made to pay for the mistake of their lawyers. Counsel does not explain, and did not provide any affidavits below addressing, what accounted for the mistake about the jurisdiction for the case, however. The most he says is that a law clerk was confused about which county the injury occurred in. The appellants of course would know what county they live in, and their counsel would have (or certainly should have) their address. The letter allegedly mailed to Prince George's County on May 25,

2007, had a blank signature line. If it were signed, it should have been signed by counsel for the appellants, as their representative, and not by a law clerk, who would be under the supervision of counsel in any event. Moreover, Edgewater is in eastern Anne Arundel County, not close to Prince George's County. (We note also that the May 25, 2007 letter does not state the place of the injury, as required by CJ section 5–304(c)(3)).

Accordingly, under the circumstances here, it was not an abuse of discretion for the circuit court, in ruling on the motion to dismiss, to conclude that the appellants had not shown good cause sufficient to waive the CJ section 5–304 notice requirements. For that reason, the court properly dismissed Counts I through IV and VI of the complaint.

## III.

### *Section 1983 Claim and "[C]laims of violations of [the] Local Government Tort Claims Act, gross negligence and related claims "*

■ As noted above, the appellees did not move to dismiss Count V, the section 1983 claim, on the ground that the notice requirements of the LGTCA were not satisfied or properly subject to waiver. Clearly, the dismissal of Count V was not granted on the same basis that the other counts were dismissed.[8]

The appellants argue in their brief that, if this Court upholds "the trial court's dismissal of [all counts except Count V] against Anne Arundel County, there is no ground to dismiss Count V against the County or any counts against individuals, *i.e.* Appellee Hinson, on the pleadings." Also in

---

8. The appellants correctly point out that the notice requirements of the LGTCA do not apply to a section 1983 claim. The appellees did not move to dismiss Count V for noncompliance with the LGTCA notice requirements, and there is no reason to think that the court granted the motion to dismiss for Count V on that ground.

their brief, the appellants seem to argue, although it is not clear, that the LGTCA creates an independent private cause of action that somehow exists outside of the CJ section 5–304 notice requirements.[9]

We note from the outset that the appellants have incorrectly named Officer Hinson as an appellee in this Court. Officer Hinson is not a party to this case. Although the parties now recognize that he must have been the officer who responded to Ransom's call on the day in question, the appellants did not at any time file, or attempt to file, an amended complaint naming Officer Hinson as a defendant. Maryland does not authorize "John Doe" pleadings. *Nam v. Montgomery County*, 127 Md.App. 172, 185, 732 A.2d 356 (1999). Accordingly, the "Unnamed Police Officer" listed in the complaint is not a proper party defendant (and is not an appellee) and Officer Hinson has not been sued.[10]

Section 1983 of the United States Code, not the LGTCA, is the statutory vehicle by which a person whose federal constitutional rights have been violated by another, acting under color of state law, may seek damages in redress. It provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

---

**9.** The appellants do not make any argument whatsoever about the court's dismissal of the claims against defendants Leopold and Teare. Indeed, those defendants are not even mentioned in the appellants' brief, except that Leopold's name is in the caption of the case on the brief's cover page. The appellants appear to concede that those defendants had no personal involvement in the incident nor were they even in office when the incident occurred.

**10.** Because Officer Hinson is not a party to this case, the "with prejudice" dismissal of the section 1983 claim would not preclude a subsequent lawsuit against him on that claim.

Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C.A § 1983 (2003).

■ A local police officer is a "person" within the meaning of that word in section 1983. *DiPino v. Davis,* 354 Md. 18, 45, 729 A.2d 354 (1999). In addition, a unit of government is a "person" subject to suit under section 1983, although not on a *respondeat superior* basis. *Id.* Here, the only allegations against Anne Arundel County were based on *respondeat superior, i.e.,* liability for the acts of Officer Hinson, which is not a permissible basis for section 1983 liability Accordingly, Anne Arundel County properly was dismissed as a defendant in Count V.

■ Finally, there is no merit in the appellants' argument that the LGTCA creates an independent cause of action. It does not do so. Rather, it allocates responsibility between a local government entity and its employees for liability and payment of damages:

> Under [the LGTCA], a local governmental entity is liable, up to $200,000 per person, $500,000 for all claims, for its own tortious conduct. It is also liable for tort judgments for compensatory damages rendered against its employees, if the judgment arises from tortious conduct committed within the scope of the employment. Under [CJ] §§ 5–302(b) and 5–303(b) . . ., such a judgment, even though rendered against the employee, must be paid by the governmental entity. Unless the employee is found to have acted with actual malice, the plaintiff may not execute against the employee's assets. If the employee is found to have acted with actual malice, however, the judgment may be executed against the employee's assets, and the entity may seek indemnification for any sums it has paid, for compensatory damages, under [CJ] § 5–303(b)(1). [CJ] [s]ection 5–303(e) adds that, in addition to any defense available to it under the LGTCA, the entity "may assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987 [the effective date of LGTCA], and

**590**

possessed by its employee for whose tortious act or omission the claim against the local government is premised and a local government may only be held liable to the extent that a judgment could have been rendered against such an employee under this subtitle."

*DiPino v. Davis,* 354 Md. at 49, 729 A.2d 354.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS.**