REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1920

September Term, 2015

_____

ANTHONY LEWIS, *et al.*

v.

BALTIMORE CONVENTION CENTER, *et al.*

_____

Kehoe,
Nazarian,
Shaw Geter,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: December 1, 2016

A class of employees of the Baltimore Convention Center (the "Class") appeals the judgment of the Circuit Court for Baltimore City dismissing their claims against the City of Baltimore (the "City") and their union, AFSCME Local 44 (the "Union"). The Class had alleged that the City breached its contract with the Union by failing to properly pay overtime wages, that the Union had breached its duty of fair representation, and that the Union had interfered tortiously with the contract. The circuit court dismissed the complaint and we affirm.

## I. BACKGROUND

The Baltimore Convention Center ("the Convention Center") first opened in 1979 and is owned and operated by the City. Until late 2008, though, Convention Center employees were not covered by the same employment contract as most City employees, which took the form of a recurring memorandum of understanding ("MOU") between the City and the Union. The MOU requires the City to pay employees an increased overtime wage for time worked on sixth, seventh, and eighth consecutive days, and for odd-hour shifts. But because employment at the Convention Center regularly entails working weekend night shifts, and six, seven, or eight consecutive days to accomplish the Center's primary function (hosting conventions), Center employees originally were treated for overtime pay purposes as mayoral appointees, and paid according to the overtime provisions of the City's Administrative Manual, Section 205-2. For terms of employment other than overtime pay, Convention Center employees were treated "as if" they were covered by the MOU, even though they were not formally covered by it.

As a result, Convention Center employees occupied a unique space on the City's payroll: they received most of the benefits built into the MOU, but weren't officially covered by it. And over time, this uniqueness led to frustration and grievance. Employees began challenging the arrangement in 2005; on August 22, 2008, at the employees' urging, the Union asked the City Labor Commissioner for a bargaining unit clarification that would bring Convention Center employees within the MOU. The City agreed. The City and the Union negotiated and, on October 22, 2008, concluded a new MOU for the 2009 and 2010 fiscal years ("FY") that included Convention Center employees as part of the bargaining unit.

This didn't resolve all of the employees' concerns, though, so in 2009, the Union and the City exchanged correspondence and held meetings designed to address the employees' complaints, chief among them the issue of payment for consecutive day overtime under the MOU. The meetings culminated in an extended meeting on March 2, 2010, at which the Union and City reached an understanding that did *not* include payment of past consecutive day overtime pay for Center employees under the FY2009–10 MOU.

Shortly after the conclusion of the 2009-2010 meetings, negotiations for the FY2011–12 MOU began, and they were tense. The Union claims that it pursued the consecutive day overtime pay issue on behalf of the Convention Center employees during negotiations, but the City opposed any change, especially in the light of the strain the Great Recession was putting on the City's budget. As the Union's counsel explained in a September 15, 2011 letter, this was "the second consecutive year in which most all City

3

employees [] face[d] compulsory wage furloughs," and that the City had "little funds to adjust discretionary economic issues."

The negotiations for the FY2011–12 MOU took so long that agreed terms of the MOU went into effect before contentious terms were resolved. Ultimately, the new MOU did not change the terms regarding consecutive day overtime pay. The Union later explained to the Class that it had to relent on this issue in order to complete the MOU for all represented City employees. The MOU clarified the City's longstanding position on overtime pay in an addendum to the new MOU, executed on June 29, 2011, to the extent that it made explicit that "[t]he Convention Center shall continue to follow its existing pay practices including its method of calculating overtime." In addition, the FY2011–12 MOU contained one other relevant overtime provision, paragraph 15.E.2, that tracked the City's policy for mayoral employees (again, the source of the historic practice): "[w]here in the normal operation of a department, work is regularly scheduled on Saturdays and/or Sundays, no more than ten (10) days of work shall be scheduled for any employee in each fourteen (14) day period, unless there is an emergency or unforeseen circumstance." *See* BUREAU OF THE BUDGET & MGMT. RESEARCH, CITY OF BALT., ADMINISTRATIVE MANUAL, § 205-2 (1990).

On July 6, 2012, the Class filed suit in the United States District Court for the District of Maryland against the Convention Center (a City agency) and its director for, among other claims, breach of contract. The court dismissed the case on December 10, 2012 on a variety of grounds, including the ground that the Class could not bring a breach of contract claim before exhausting administrative remedies. The Class then attempted an

4

administrative remedy by submitting a class-based grievance to the Union. At the penultimate step in the grievance process, though, the Union decided, on June 21, 2013, not to pursue arbitration against the City, and sent the Class a long letter detailing its rationale.

The Class responded to that setback on March 18, 2015 with the complaint underlying this appeal. The Class alleged claims of breach of contract against the City, "breach of the union representation agreement" against the Union, "tortious breach of the duty of fair representation" against the Union, and "tortious interference with the MOU contract" against the Union. The City filed a motion to dismiss on May 11, 2015. The court granted the City's motion to dismiss (or motion for summary judgment in the alternative) by oral ruling on June 29, 2015, and entered the accompanying written order on July 1, 2015. Without reaching the merits, the court dismissed the claims against the City because the Class had not satisfied the notice requirement of the Local Government Tort Claims Act ("LGTCA"), and dismissed the other claims as barred by the statute of limitations. This appeal followed.

## II. DISCUSSION

The Class disputes that its claims are barred by threshold procedural defects,[1] and asks us to reverse for consideration of the merits. But although we have some doubt about

---

[1] The Class phrased the Questions Presented as follows in its brief:

1. Whether the trial judge was clearly erroneous in hearing and deciding the Appellees' motions to dismiss the original complaint, which had been replaced by the successor First

5

whether the LGTCA applies to the Class's claims against the City, we have no doubt that the Class's claims against the City and the Union, whatever their merits, were long barred by limitations by the time they were filed, and that the tortious interference claim fails as a matter of law.

## A. Standard Of Review

"On appeal from a decision to grant a motion to dismiss for failure to state a claim upon which relief can be granted, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." *Ransom v. Leopold*, 183 Md. App. 570, 578–79 (2008) (internal citations and quotations omitted). In doing so, "we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party." *Converge Servs. Grp. v. Curran*, 383 Md. 462, 475 (2004). And "[i]f, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded

---

Amended Complaint and where no motion to dismiss the First Amended Complaint had been filed.

2. Whether The Local Government Tort Claims Act ("LGTCA") applies to a breach of contract claim against the City Appellee.

3. Whether claims against the Union Appellees arise from the required condition precedent of mandatory contractual exhaustion and mandatory and binding arbitration procedure that constitute a necessary element of the claims, and therefore set the date for the statute of limitations.

4. Whether the allegations against the Union Appellees as set forth in the First Amended Complaint are barred by the statute of limitations.

6

by the court, the motion shall be treated as one for summary judgment." Rule 2-322(c). When the court dismisses the complaint without explanation and the record does not indicate that material outside of the complaint was excluded, we assume that the court considered it. *Smith v. Danielczyk*, 400 Md. 98, 104-05 (2007); *Worsham v. Ehrlich*, 181 Md. App. 711, 723 (2008).

When reviewing a summary judgment decision, we determine whether the trial court was legally correct, "since a trial court decides issues of law, not fact, when granting summary judgment." *Volcjak v. Wash. Cty. Hosp.*, 124 Md. App. 481, 495 (1999); *see also Converge Servs. Grp.*, 383 Md. at 476. However, we only determine whether the trial court was correct as a matter of law once we determine that there was no genuine dispute of material fact. *Dashiell v. Meeks*, 396 Md. 149, 163 (2006). We review the circuit court's legal conclusions *de novo*. *Walter v. Gunter*, 367 Md. 386, 392 (2002).

### B.   The Breach Of Contract Claim Against The City Was Barred By Limitations.

The Class alleges that the Convention Center, a subdivision or agency of the City, and its director breached the MOU. The circuit court dismissed the claim for failure to comply with the LGTCA's notice requirement. *See* Md. Code (1973, 2013 Repl. Vol.), §5-304 of the Courts & Judicial Proceedings Article ("CJ") (amended 2016). We have doubts about whether the LGTCA applies here at all,[2] but we have no doubt that this claim,

---

[2] Neither party could point us to authority extending the reach of the LGTCA to claims involving contracts to which the City is a party, nor did we find any. The parties seem to assume it applies because the Class's breach of contract claim is unliquidated. *See* Md. Code (1973, 2013 Repl. Vol.), §5-304(a) of the Courts & Judicial Proceedings Article ("CJ") (amended 2016) ("[A]n action for unliquidated damages may not be brought against

7

whatever its merits, was barred by limitations and properly dismissed. *See City of Frederick v. Pickett*, 392 Md. 411, 424 (2006) (this Court may affirm a dismissal "on any ground adequately shown by the record, whether or not relied upon by the trial court." (quoting *Berman v. Karvounis*, 308 Md. 259, 263 (1987))).

The Class contends that the standard civil statute of limitations applies to its claim against the City. *See* CJ § 5-101 ("A civil action at law shall be filed within three years from the date it accrues *unless another provision of the Code provides a different period of time within which an action shall be commenced*." (emphasis added)). The Class is mistaken in this instance: at the time this claim accrued, § 4A(c) of Article II of the Baltimore City Charter established a one-year limitations period for contract claims against Baltimore City: "[a] claim is barred unless the claimant files suit within 1 year from the

---

a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury."). But we aren't sure it's as simple as determining whether a claim is liquidated or not. The LGTCA embodies a statutory bargain of sorts— the local government waives the sovereign immunity that normally would bar a claim altogether in exchange for, among other things, pre-suit notice (for the purpose of investigating and possibly resolving claims) and a damages cap. *See Williams v. Maynard*, 359 Md. 379, 389–92 (2000). Sovereign immunity functions differently in contract. H. Dean Bouland, *Recent Legislation: Abrogation of Sovereign Immunity in Contract Cases in Maryland*, 6 U. Balt. L. Rev. 338, 342 (1977). The City is a party to the contract, and its contracts typically contain other terms (such as notice provisions and damages limitations) that achieve the same purposes that the LGTCA fulfill in the context of tort claims. But we need not resolve this issue here because the Class's claims against the City are, as we explain, unambiguously barred by limitations; our decision to affirm the circuit court's judgment shouldn't be read to signal a view on the LGTCA question one way or the other.

date on which the claim arose or within 1 year after completion of the contract giving rise to the claim, whichever is later."[3]

And there is no scenario under which this claim was filed on time. A breach of contract claim accrues when the party knows or should have known the facts giving rise to its claim. *Kumar v. Dhanda*, 426 Md. 185, 195 (2012); *Vigilant Ins. Co. v. Luppino*, 352 Md. 481, 489 (1999). The overtime pay terms underlying the claims represent the Convention Center's historic treatment of its employees and date back well into the last decade. The Class's unhappiness with those manifested in efforts to bring themselves within the MOU in 2008, and in signed agreements that took effect no later than July 1, 2008. Even if, though, we were to assume that these disputes didn't ripen until the FY2011–12 MOU was signed, the Class's claims accrued on June 29, 2011, and the complaint wasn't filed until March 18, 2015. Put another way, this breach of contract claim would be barred even if the standard three-year limitations period applied, which it doesn't, and was long since barred by the one-year period that did.

Nor was the limitations period tolled during the pendency of the federal suit and the grievance proceedings, as the Class suggests (but doesn't argue in so many words). The Class decided for its own reasons to pursue claims in federal court before suing in state

---

[3] Art. 23A § 1A was, and CJ § 5-5A-01 is, the provision waiving sovereign immunity and establishing a one year limitations period for municipal governments created pursuant to Article XI-E of the Maryland Constitution. But this doesn't cover Baltimore City. *See* Dan Friedman, The Maryland Constitution 331 (Oxford University Press 2d ed. 2011). Instead, Baltimore City's express powers are set forth in Article 4, Section 6 of the Public Local Laws of Maryland, which are reprinted as Article II of the Baltimore City Charter, *id*. at 310-11, and the relevant limitations period here appears in Article II, § 4A.

court. Nothing compelled the Class to take that procedural path, and the Class cites no authority for the proposition that the time it took to pursue those remedies delayed the accrual of its state law claims.

## C. The Duty of Fair Representation Claim Also Was Barred By Limitations.

*Next*, the Class alleged in its amended complaint that the Union breached its duty of fair representation to the Class during the FY2011–12 MOU contract negotiations and in deciding not to pursue a Step 4 grievance. The circuit court dismissed this claim on limitations grounds, and we agree that these too were barred.

Although federal labor law prescribes a shorter-than-normal limitations period for labor disputes, Maryland does not, *see DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169–72 (1983), so in this instance the standard three-year period governs. *See* CJ § 5-101. But as before, the limitations clock began ticking at "the time the plaintiff could have acted." *Henry's Drive-In, Inc. v. Pappas*, 264 Md. 422, 428 (1972). This moment is easy to define with regard to the Union's representation of the Class—it concluded, by definition, when the negotiations concluded and the MOU containing the allegedly offending terms took effect. And the most generous date we can put on that event is July 13, 2011, the day the City's Board of Estimates formally noted the MOU (it actually had taken effect on July 1). This means that the Class would have had to file this claim by July 13, 2014, but it wasn't filed until March 18, 2015. *See* CJ § 5-101.

The claim isn't saved by the Union's decision on January 2, 2013 not to pursue arbitration of the Class's grievance. The grievance raised the same issue—the Class's

right, or not, to receive overtime pay for work performed on sixth, seventh, and eighth consecutive days of scheduled work—and the dispute and the operative facts date back to well before the FY 2011–12 MOU. The Class filed the 2013 grievance in response to the federal court's holding in December 2012 that the Class had failed to exhaust administrative remedies; the allegations in the Class's federal complaint recounted the City's historic pay practices for Convention Center employees, and alleged as examples the treatment certain employees received during pay periods in September and October 2011 and February 2012. This is all to say that the Class's notion of fair representation, and the alleged breach that it sought to pursue here, occurred, and any claims accrued, long before the Union's specific decision not to continue the Class's grievance to arbitration.

> **D.** **The Class's "Tortious Interference With The MOU Contract" Claim Is Not Cognizable.**

*Finally*, and limitations aside, the Class's Hail Mary "tortious interference" claim against the Union was properly dismissed. It is not possible under Maryland law for a party to a contract—in this case, the Union—to interfere tortuously with a contract to which it is a party. *Travelers Indem. Co. v. Merling*, 326 Md. 329, 343 (1992) ("For the tort [of tortious interference] to lie, the defendant tortfeasor cannot be a party to the contractual or economic relations with which he has allegedly interfered."); *see also, e.g.*, *Alexander & Alexander Inc. v. B. Dixon Evander & Assoc., Inc.*, 336 Md. 635, 656 (1994); *K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 154–56 (1989); *Sharrow v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 763 (1986); *Nat. Design, Inc. v. Rouse Co.*, 302 Md. 47, 69 (1984); *Wilmington*

11

*Tr. Co. v. Clark*, 289 Md. 313, 329 (1981) ("[T]here is no cause of action for interference with a contract when suit is brought against a party to the contract."); *Prof'l Staff Nurses Ass'n v. Dimensions Health Corp.* 110 Md. App. 270, 283–84 (1996), *aff'd*, 346 Md. 132 (1997).

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**