75 A.3d 987

William ROUNDS, et al.

v.

MARYLAND NATIONAL CAPITAL PARK AND
PLANNING COMMISSION, et al.

No. 889, Sept. Term, 2012.

Court of Special Appeals of Maryland.

Sept. 9, 2013.

Michael R. Sklaire (Greenberg Traurig, McLean, VA, Creighton R. Magid, Dorsey & Whitney, Washington, DC, on the brief), for Appellant.

James L. Parson, Jr. (Lynott, Lynott & Parson, PA, Rockville, MD, on the brief), James F. Lee, Jr. (Arthur T.K. Norris, Lee & McShane, PC, Washington, D.C., on the brief), Adrian R. Gardner, Riverdale, MD, for Appellee.

Panel: WRIGHT, MATRICCIANI, and WATTS,* JJ.

WATTS, J.

On October 17, 2011, William Rounds, Marvin Gaither, Clifton Lee, James Bell, Bernice Martin, and Robert and Michelle Awkard (together, "appellants") filed in the Circuit Court for Montgomery County an Amended Complaint, in which appellants alleged that: (1) the Maryland National Capital Park and Planning Commission ("the Commission"), Macris, Hendricks, and Glascock, P.A. ("MHG"), Douglas H. Riggs, III, Warren Brown, Paul and Sara Arey, Charles and Marilyn Mess, Audrey Hill, and Milton Johnson (together, "appellees") have "taken steps to prevent access to and use of [appellants'] properties" adjacent to "Farm Road" in Sandy Spring, Montgomery County, Maryland; and (2) the Commission "has refused to issue [appellants] addresses, and in some cases rescinded addresses," for appellants' properties.

The circuit court granted motions to dismiss all counts. Appellants appealed, raising four issues, which we reorder and rephrase:

---

* Shirley M. Watts, now serving on the Court of Appeals, authored this opinion while an active member of this Court; she participated in this opinion's publication as a specially assigned member of this Court.

I. Did the circuit court err in dismissing Count One through Count Four for lack of proper notice?

II. Did the circuit court err in dismissing Count Five through Count Eleven for failure to join necessary parties?

III. Did the circuit court err in dismissing Count Twelve and Count Thirteen as time-barred?

IV. Did the circuit court err in dismissing Count Twelve and Count Thirteen because MHG and Riggs did not owe a duty to appellants?

For the reasons below, we answer questions I, II, and III "no," and we do not reach question IV. Thus, we affirm.

## BACKGROUND

On August 11, 2011, appellants filed a Complaint in the circuit court. On October 17, 2011, appellants filed an Amended Complaint in the circuit court. As to the Commission, the Amended Complaint includes: Count One (substantive due process); Count Two (procedural due process); Count Three (regulatory taking); and Count Four (declaratory judgment that the Commission exceeded its authority). As to all appellees, including the Commission, the Amended Complaint includes Count Five through Count Eleven (declaratory judgment that appellants have an easement to use Farm Road and a ten-foot right-of-way).[1] As to the Commission, MHG, Riggs, Brown, and the Areys, the Amended Complaint includes Count Twelve (wrongful interference) and Count Thirteen (slander of title).

In the Amended Complaint,[2] appellants allege as follows:[3]

---

**1.** Specifically, the Amended Complaint includes: Count Five ("Public Roads"); Count Six ("Express Easement by Reservation"); Count Seven ("Implied Easement by Necessity"); Count Eight ("Implied Easement by Grant"); Count Nine ("Implied Easement by Reservation"); Count Ten ("Implied Easement by Prescription"); and Count Eleven ("Implied Easement by Subdivision").

**2.** In its brief, the Commission includes exhibits that were not attached to the Amended Complaint. The Commission moves for this Court to

Appellants' properties are adjacent to "Farm Road, which has provided the only means of ingress and egress" to appellants' properties. A ten-foot right-of-way accompanies Farm Road.

"In or around 1994, [ ] Brown, a real estate developer, began developing the area around Farm Road[.] . . . Brown began developing the 'Dellabrooke' subdivision in the area to the east of Farm Road[.] . . . Brown also began developing the 'Dellabrooke Forest' subdivision to the west of Farm Road." "As part of his development efforts, Brown eliminated the northern access to Farm Road from Goldmine Road. In addition, Brown created a fictional 'conservation easement' . . . and included it in subdivision plans submitted to the Commission."

"To facilitate development of 'Dellabrooke' and 'Dellabrooke Forest,' Brown engaged [MHG] to prepare certain documents for submission to the Commission. [ ] Riggs was the [MHG] employee primarily responsible for the preparation of the documents." "Brown directed Riggs to create 'survey' documents for submission to the Commission that falsely depicted 'Dellabrooke' and 'Dellabrooke Forest' as being unencumbered by either Farm Road or the [ten-f]oot [r]ight-of-[w]ay, that misrepresented the title history of the land[,] and that resulted in the Commission deleting Farm Road from the State's property map." "[T]he Commission approved Brown's, [MHG]'s and Riggs'[s] submissions." On August 3, 2000, the Commission approved Plat 21707 "for the Dellabrooke subdivision."

"In or around 2003, the Areys purchased 69 acres of the fictional 'conservation easement' . . . from Brown for purposes of developing the property." "[T]he Areys, even

take judicial notice of the exhibits. In a reply brief, appellants move to strike the exhibits. In our analysis, we rely exclusively on the Amended Complaint. Because we do not refer to the exhibits, we need not rule on the motion to take judicial notice or the motion to strike.

3. The Amended Complaint contains seventy-eight factual contentions over twenty-one pages. The following is a compilation of the relevant facts.

before their purchase of the 69 acres, worked behind the scenes with Brown to develop 'Dellabrooke' and 'Dellabrooke Forest,' to cut off the northern access to Farm Road, and to eliminate Farm Road entirely[.]"

"The Commission's own documentation shows that it once issued ... addresses to ... the properties that certain [appellants] now own. Inexplicably, however, the Commission struck the addresses from its records." "When they learned that their addresses no longer existed, [appellants] attempted to obtain addresses from the Commission." On November 7, 2007, Rounds "visited the Commission[,]" which "refused to issue [appellants] addresses for their properties on the grounds that there were 'errors' on the 1966 Tax Map involving mislabeling of certain parcels." The Commission "urged [ ] Rounds and Gaither to contact the Maryland Department of Planning ('MDP') to have the 1966 Tax Map corrected if they wanted addresses[.]" "Rounds arranged a meeting with the MDP[.]" In "a letter to the Commission dated November 14, 2007, [the MDP] inform[ed] the Commission that ... [it] had 'corrected the [MDP]'s Property Map ... to reflect the 'Farm Road' and parcel locations[.]" On November 20, 2007, Rounds and Gaither returned to the Commission, which "again rejected [ ] Rounds'[s] request for an address." "[T]he Commission has now taken different positions as to why it is refusing to issue [appellants] addresses. It now claims that it cannot issue [appellants] addresses because they have not presented documentation proving their right to access their propert[ies]." "The most recently announced reason for denying [appellants] addresses is because the neighbors cannot agree *where* Farm Road might or might not exist." (Emphasis in original).

In a letter to the Commission [4] dated February 28, 2008, the Montgomery County Executive stated: "Over the past several months, I have received extensive correspondence

---

4. Specifically, the letter was addressed to the Montgomery County Planning Board, which is part of the Commission.

and inquires about the Farm Road. . . . I hope that you are able to recognize the Farm Road as the private right-of-way that it seems to be and provide the property owners with their rightful recognition." The Commission still did not issue addresses to appellants.

In a letter to the Montgomery County Executive and the Commission dated June 10, 2008, appellants stated that they intended to file suit. In June 2008, appellants sued appellees in the United States District Court for the District of Maryland ("the federal court"). On July 15, 2011, the federal court dismissed the case for failure to exhaust state remedies.

On May 15, 2012, the circuit court granted motions to dismiss with prejudice all counts in the Amended Complaint as to MHG, Riggs, and Brown. Specifically, the circuit court dismissed with prejudice: (1) Count Five through Count Eleven as to MHG, Riggs, and Brown, who do not own property adjacent to Farm Road and thus are not interested parties; (2) Count Twelve and Count Thirteen as time-barred as to MHG, Riggs, and Brown; and (3) Count Twelve and Count Thirteen as to MHG and Riggs because they did not owe a duty to appellants.

On June 7, 2012, the circuit court granted motions to dismiss all counts as to the Commission, the Areys, the Messes, Hill, and Johnson. Specifically, the circuit court dismissed: (1) Count One through Count Four, with prejudice, as to the Commission for lack of proper notice; (2) Count Five through Count Eleven, without prejudice, as to the Commission, the Areys, the Messes, Hill, and Johnson, for failure to join necessary parties; and (3) Count Twelve and Count Thirteen, with prejudice, as to the Commission, the Areys, the Messes, Hill, and Johnson, as time-barred.[5]

---

5. Although the circuit court dismissed all counts as to the Commission, the Areys, the Messes, Hill, and Johnson, the circuit court rejected contentions that appellants failed to exhaust administrative remedies and that claim preclusion barred Count Six and Count Seven.

## STANDARD OF REVIEW

An appellate court reviews *de novo* a trial court's grant of a motion to dismiss. *Gomez v. Jackson Hewitt, Inc.*, 427 Md. 128, 142, 46 A.3d 443 (2012). The appellate court reviews only "the four corners of the complaint and its incorporated supporting exhibits, if any." *Forster v. Office of Pub. Defender*, 426 Md. 565, 604, 45 A.3d 180 (2012) (citation omitted). The appellate court assumes the truth of—and views in the light most favorable to the plaintiff—"all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them[.]" *Gomez*, 427 Md. at 142, 46 A.3d 443 (citation omitted). Because the plaintiff must plead the complaint's factual allegations "with sufficient specificity[,]" *Forster*, 426 Md. at 604, 45 A.3d 180 (citation omitted), however, the appellate court does not consider "bald assertions [or] conclusory statements[,]" *id.* (citation omitted), and construes against the plaintiff "[a]ny ambiguity or uncertainty in the [factual] allegations[.]" *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 335, 983 A.2d 408 (2009) (citation omitted). The appellate court affirms the grant of the motion "only if the [factual] allegations and permissible inferences, if true, would not afford relief to the plaintiff, *i.e.*, the [factual] allegations do not state a cause of action for which relief may be granted." *Gomez*, 427 Md. at 142, 46 A.3d 443 (citation omitted). The appellate court may affirm the grant of the motion "on any ground adequately shown by the record, whether or not relied upon by the trial court." *Id.* (citation and internal quotation marks omitted).

## DISCUSSION

### I. Count One Through Count Four (Proper Notice)

#### (A) Contentions

Appellants contend that the circuit court erred in dismissing Count One through Count Four for lack of proper notice. Specifically, appellants argue that the notice requirement of the Local Government Tort Claims Act ("LGTCA"), Maryland

Code Ann., Courts & Judicial Proceedings Article ("C.J.P.") § 5–301 *et seq.*, does not apply to state constitutional torts. Alternatively, although appellants concede that they did not comply with the LGTCA notice requirement, appellants assert that they showed good cause not to comply with the LGTCA notice requirement because they "solicited the assistance of [the] County Executive[,]" and "relied upon the Commission's ever-changing, and misguided, explanations for the denial of addresses before determining that the instant suit was necessary."

The Commission responds that the circuit court did not err in dismissing Count One through Count Four for lack of proper notice. Specifically, the Commission contends that the LGTCA notice requirement applies to state constitutional torts, and that appellants did not show good cause to excuse compliance with the LGTCA notice requirement because appellants never provided "notice to anyone in authority who works at" the Commission.

### (B) Standard of Review

■ An appellate court reviews for abuse of discretion a trial court's conclusion as to whether a plaintiff showed good cause to excuse compliance with the LGTCA notice requirement. *See Prince George's Cnty. v. Longtin*, 190 Md.App. 97, 124, 988 A.2d 20 (2010) ("*Longtin I* "), *aff'd*, 419 Md. 450, 19 A.3d 859 (2011) ("*Longtin II* ").

### (C) Law

### (1) The LGTCA Notice Requirement

"[A]n action for unliquidated damages may not be brought against a local government . . . unless the notice of the claim . . . is given within 180 days after the injury." C.J.P. § 5–304(b)(1). "[U]nless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given." C.J.P. § 5–304(d).

■ Under C.J.P. § 5–304(d), a plaintiff has shown good cause to excuse compliance with the LGTCA notice requirement where the plaintiff: (1) "prosecuted his [or her] claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances[,]" *Mitchell v. Hous. Auth. of Balt. City,* 200 Md.App. 176, 207, 26 A.3d 1012 *cert. denied,* 423 Md. 452, 31 A.3d 920 (2011) (citation and internal quotation marks omitted); or (2) delayed because government representatives made "misleading" representations to the plaintiff. *Longtin II,* 419 Md. at 469, 19 A.3d 859.

### (2) The LGTCA Notice Requirement's Applicability to State Constitutional Torts

To date, in directly considering the issue, no Maryland appellate court has expressly held that the LGTCA notice requirement applies to state constitutional torts; however, in multiple cases, Maryland appellate courts have indicated as much in *dicta. See Ashton v. Brown,* 339 Md. 70, 107 n. 19, 660 A.2d 447 (1995) ("[T]here is no exception in the [LGTCA] for constitutional torts. In fact, there is no exception in the statutory language for any category of torts."); *Thomas v. City of Annapolis,* 113 Md.App. 440, 457, 688 A.2d 448 (1997) ("The LGTCA ... applies to all torts without distinction, including ... constitutional torts." (Footnote omitted)); *Ransom v. Leopold,* 183 Md.App. 570, 579, 962 A.2d 1025 (2008) (same) (quoting *Thomas,* 113 Md.App. at 457, 688 A.2d 448); *Hansen v. City of Laurel,* 420 Md. 670, 682 n. 7, 25 A.3d 122 (2011) ("[T]he plain language ... of the LGTCA indicates a legislative intent to make the notice requirement broadly applicable to tort actions brought directly against local governments[.] Whether the [LGTCA notice] requirement applies to constitutional claims, which plaintiffs may bring directly against local governments, remains uncertain. We have intimated as much, however." (Citing *Longtin II,* 419 Md. 450, 19 A.3d 859; *Ashton,* 339 Md. at 107 n. 19, 660 A.2d 447) (omission in original)); *see also Longtin II,* 419 Md. at 521, 19 A.3d 859 (Harrell, J., concurring in part and dissenting in

part) ("[W]e recognize, at least implicitly, that the LGTCA procedural requirements *(e.g.,* notice) apply also to constitutional tort claims." (Citing *Ashton,* 339 Md. at 107 n. 19, 660 A.2d 447)); *Luy v. Balt. Police Dep't,* 326 F.Supp.2d 682, 693 (D.Md.2004), *aff'd,* 120 Fed.Appx. 465 (4th Cir.2005) ("[T]he notice requirements of the LGTCA apply to intentional and constitutional torts." (Citing *Curtis v. Pracht,* 202 F.Supp.2d 406, 414 (D.Md.2002), in turn citing *Thomas,* 113 Md.App. at 457, 688 A.2d 448)).

In multiple cases involving state constitutional torts, by deciding whether the LGTCA notice requirement would bar plaintiffs' claims, Maryland appellate courts have discussed—albeit without expressly deciding—whether the LGTCA notice requirement applies to state constitutional torts. *See, e.g., Longtin I,* 190 Md.App. 97, 988 A.2d 20; *Longtin II,* 419 Md. 450, 19 A.3d 859; *Wilbon v. Hunsicker,* 172 Md.App. 181, 913 A.2d 678 (2006), *cert. denied,* 398 Md. 316, 920 A.2d 1060 (2007); *White v. Prince George's Cnty.,* 163 Md.App. 129, 877 A.2d 1129, *cert. denied,* 389 Md. 401, 885 A.2d 825 (2005); *Chappelle v. McCarter,* 162 Md.App. 163, 873 A.2d 458 (2005).

In *Longtin I,* 190 Md.App. at 117–21, 988 A.2d 20, in *dicta,*[6] this Court stated:

The Court of Appeals has consistently said that the LGTCA ... do[es] not exclude State constitutional torts from [its] coverage. Less clear is whether the restrictions of those statutes that would defeat all or partial recovery apply in every respect to State constitutional torts.

On the one hand, the Court of Appeals has said that a State constitutional tort, such as one premised on a violation of a "self-executing" constitutional provision, like Article 24 of the Maryland Declaration of Rights, is enforceable in a common law action for damages. In addition, a State

---

6. The statements below in *Longtin I,* 190 Md.App. at 117–21, 988 A.2d 20, were *dicta* because this Court held that the trial court did not abuse its discretion in concluding that the plaintiffs showed good cause to excuse compliance with the LGTCA notice requirement. *Id.* at 124, 988 A.2d 20.

constitutional tort action cannot be defeated by the asser-
tion of official or local government immunity. Thus, it
appears to exist independently of the LGTCA, which is
premised on a *waiver* of governmental immunity.

On the other hand, at least in [ ] cases [that involve the
Maryland Tort Claims Act ("MTCA"), Maryland Code Ann.,
State Government Art. ("S.G.") § 12–101 *et seq.*], the Court
of Appeals has indicated that recovery against the State is
available as long as the claimant complies with the proce-
dural requirements of the [MTCA]. In addition, in *Md.
Reclamation Assoc. v. Harford Cnty.*, 342 Md. 476, 492–93,
677 A.2d 567 (1996), the Court also emphasized that admin-
istrative exhaustion requirements apply even in cases of
alleged State constitutional violations. Finally, presumably
the Court of Appeals, in concluding that constitutional torts
were not excluded from the LGTCA and MTCA, intended
that such coverage include more than just a deeper pocket
for recovery and the protection of employees from individual
liability.

The issue of the applicability *vel non* of tort claims act
notice of claim requirements to State constitutional torts is
one that has arisen in a number of other jurisdictions—
always with the same result. Often citing constitutional
concerns, these courts invariably have held that these proce-
dural requirements are inapplicable to actions for violations
of a state constitutional right. *See Moore Real Estate, Inc.
v. Porter Cnty. Drainage Bd.*, 578 N.E.2d 380, 381 (Ind.Ct.
App.1991); *Dishman v. Neb. Pub. Power Dist.*, 240 Neb.
452, 482 N.W.2d 580, 582 (Neb.1992); *Greenway Dev. Co. v.
Borough of Paramus*, 163 N.J. 546, 750 A.2d 764, 768, 770
(N.J.2000); *Baumler v. Town of Newstead*, 198 A.D.2d 777,
604 N.Y.S.2d 372, 373 (N.Y.App.Div.1993); *Wolff v. Sec. of
S.D. Game, Fish & Parks Dep't*, 544 N.W.2d 531, 535
(S.D.1996); *Heughs Land, L.L.C. v. Holladay City*, 113 P.3d
1024, 1027 (Utah Ct.App.2005).

Some of these decisions, *see, e.g., Greenway Dev. Co.*, 750
A.2d at 770 and *Moore Real Estate*, 578 N.E.2d at 381, rely
on the decision of the U.S. Supreme Court in *Felder v.*

*Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). There, the Court held that a state tort claims act 4–month notice of claim requirement could not be applied to an action under 42 U.S.C. § 1983 for violation of an individual's federal constitutional rights. *Id.* at 138, 108 S.Ct. 2302. Speaking for the Court, Justice Brennan said that federal civil rights actions "exist independent of any other legal or administrative relief that may be available as a matter of federal or state law." *Id.* at 148, 108 S.Ct. 2302 (citing *Burnett v. Grattan*, 468 U.S. 42, 50, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984)); that a notice of claim requirement mirrored a conferral of immunity, 487 U.S. at 142, 108 S.Ct. 2302; that "[m]any civil rights victims . . . will fail to appreciate the compensable nature of their injuries within the 4–month window," *id.* at 146, 108 S.Ct. 2302; and that the state statute "burden[ed]" the exercise of the rights of civil rights victims. *Id.* at 141, 108 S.Ct. 2302. Pointing out the relative complexity of some constitutional claims, Justice Brennan said:

> [M]any other deprivations, such as those involving denial of due process or of equal protection, will be far more subtle. In the latter, and by no means negligible, category of constitutional injuries, victims will frequently fail to recognize within the 4–month statutory period that they have been wronged at all. *Id.* at 146 n. 3, 108 S.Ct. 2302.

These points are particularly telling here, because the Court of Appeals has declared Article 24 of the Maryland Declaration of Rights to be self-executing and has recognized that there is no official or local governmental immunity from a State constitutional tort. Moreover, if the four and six-month periods of *Felder* and *Burnett* were deemed too short for a plaintiff's assertion of a 14th Amendment violation, it would seem to follow that the six-month notice of claim period of [the LGTCA] is too short for the Maryland constitutional analog to the 14th Amendment—Article 24 of the Declaration of Rights.

(Emphasis, second omission, and some alterations in original) (footnotes omitted).

### (D) Analysis

#### (1) The LGTCA Notice Requirement's Applicability to State Constitutional Torts

█ In this case, we must decide whether the LGTCA applies where a plaintiff sues the Commission for a state constitutional tort.[7] We consider three points.

█ First, "generally under common law, the State enjoys sovereign immunity and is thus protected from suit for both ordinary torts **and State constitutional torts.**" *Ford v. Balt. City Sheriff's Office,* 149 Md.App. 107, 119, 814 A.2d 127 (2002) (emphasis added) (citation omitted).

█ Second, "the Commission is properly characterized as a state agency for the purpose of determining its right to invoke the doctrine of sovereign immunity." *O & B, Inc. v. Md.-Nat'l Capital Park & Planning Comm'n,* 279 Md. 459, 466, 369 A.2d 553 (1977).

Third, the LGTCA—enacted in 1987, a decade after *O & B, id.*—constitutes a waiver of the Commission's sovereign immunity.[8] *See Longtin I,* 190 Md.App. at 118, 988 A.2d 20 ("[T]he

---

7. As in *Longtin I,* 190 Md.App. at 121, 988 A.2d 20, in this case we are "[m]indful of our obligation to avoid unnecessarily deciding constitutional questions" (citation omitted); however, here, we have no choice but to decide whether the LGTCA applies where a plaintiff sues the Commission for a state constitutional tort. Because we are satisfied that the circuit court did not abuse its discretion in concluding that appellants did not show good cause to excuse compliance with the LGTCA notice requirement, *see* Part I.D.2 below, we cannot base our holding on good cause, as we did in *Longtin I,* 190 Md.App. at 121–22, 988 A.2d 20. Because appellants concede that they did not timely comply with the LGTCA notice requirement, we cannot base our holding, as the Court of Appeals did in *Longtin II,* 419 Md. at 500, 19 A.3d 859. Because appellants do not contend that they substantially complied with the LGTCA notice requirement, we do not base our holding on substantial compliance.

8. The LGTCA—not the MTCA—constitutes a waiver of the Commission's sovereign immunity. Although the MTCA applies to "the State and [ ] its units[,]" S.G. § 12–104(a)(1), the LGTCA applies to "local government[s,]" C.J.P. § 5–303(a), of which the Commission is one. C.J.P. § 5–301(d)(6). A "more specific statute ... override[s a] more

LGTCA ... is premised on a waiver of governmental immunity." (Emphasis and footnote omitted)).[9]

■ In sum: (1) sovereign immunity applies to state constitutional torts, *Ford*, 149 Md.App. at 119, 814 A.2d 127; (2) the Commission is entitled to sovereign immunity, *O & B*, 279 Md. at 466, 369 A.2d 553; and (3) the State waived the Commission's sovereign immunity through the LGTCA, *see Longtin I*, 190 Md.App. at 118, 988 A.2d 20, which sets conditions precedent to a plaintiff's ability to sue. Thus, a plaintiff may sue the Commission for a state constitutional tort only if the plaintiff complies with the LGTCA's conditions, including its notice requirement.[10]

---

general statute." *Md. Econ. Dev. Corp. v. Montgomery Cnty.*, 431 Md. 189, 212, 64 A.3d 478 (2013) (citation omitted).

9. To be precise, the LGTCA constitutes a waiver of the Commission's sovereign immunity insofar as the Commission "may not assert governmental or sovereign immunity to avoid the duty to defend or indemnify an employee[,]" C.J.P. § 5–303(b)(2), who commits "tortious acts or omissions ... within the scope of employment with the" Commission. C.J.P. § 5–302(a). In other words, the LGTCA "requires [a local] government to assume financial responsibility for a judgment against its employee by abolishing that immunity the government may have had against responsibility for the acts of its employees." *Khawaja v. Mayor & City Council, City of Rockville*, 89 Md.App. 314, 325–26, 598 A.2d 489 (1991), *cert. dismissed*, 326 Md. 501, 606 A.2d 224 (1992).

It is true that "[t]he LGTCA, by its own terms, contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity." *Khawaja*, 89 Md.App. at 325, 598 A.2d 489. In contrast to other types of torts, however, a state constitutional tort can be brought "directly [against] a local government[,]" as state constitutional torts "were available prior to the adoption of the LGTCA." *Hansen*, 420 Md. at 682 n. 7, 25 A.3d 122 (citation omitted). Thus, our reasoning is unaffected by *Khawaja*, 89 Md.App. at 325, 598 A.2d 489, or the cases that have cited *Khawaja*. *See, e.g., Williams v. Montgomery Cnty.*, 123 Md.App. 119, 126, 716 A.2d 1100 (1998), *aff'd sub nom. Williams v. Maynard*, 359 Md. 379, 754 A.2d 379 (2000) (The appellant "begins his argument by asserting that the LGTCA waives governmental or sovereign immunity when [a] plaintiff complies with the Act. This technically is untrue." (Citing *Khawaja*, 89 Md.App. at 318, 598 A.2d 489) (internal quotation marks omitted)).

10. Our conclusion is supported by *dicta* in various cases that the LGTCA notice requirement applies to state constitutional torts. *See, e.g., Ashton*, 339 Md. at 107 n. 19, 660 A.2d 447; *Ransom*, 183 Md.App.

### (2) Good Cause to Excuse Compliance with the LGTCA Notice Requirement

 Next, we are satisfied that the circuit court did not abuse its discretion in concluding that appellants did not show good cause to excuse compliance with the LGTCA notice requirement. For purposes of our analysis under the LGTCA, we assume, as appellants argue, that their injury occurred on November 20, 2007, when the Commission denied Rounds's and Gaither's requests for addresses;[11] thus, the LGTCA's 180–day notice deadline occurred in May 2008. Appellants did not send notice to the Commission until June 10, 2008; thus, as they concede, they did not comply with the LGTCA notice requirement.

We reject appellants' contention that they prosecuted their claims with the degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. *See Mitchell,* 200 Md.App. at 207, 26 A.3d 1012. The Amended Complaint does not state that appellants took any action between November 20, 2007 (the injury date), and

----

at 579, 962 A.2d 1025; *Hansen,* 420 Md. at 682 n. 7, 25 A.3d 122. We need not rely on such *dicta,* however, as we base our holding on the Commission's status as a government entity that is both: (1) a "local government" subject to the LGTCA, *see* C.J.P. § 5–301(d)(6); and (2) a State agency entitled to sovereign immunity. *See O & B,* 279 Md. at 466, 369 A.2d 553.

We do not decide whether the LGTCA notice requirement would apply where a plaintiff sues a **different** local government for a state constitutional tort. We observe that "Maryland law provides no immunity for municipalities and other local government entities from suits based upon violations of state constitutional rights." *Ashton,* 339 Md. at 101, 660 A.2d 447. Additionally, with respect to local governments other than the Commission, we do not reach our *dicta* in *Longtin I,* 190 Md.App. at 115–21, 988 A.2d 20, in which this Court observed the "[u]neasy [f]it" between state constitutional torts and the LGTCA notice requirement.

11. In Part III below, however, we conclude that, for purposes of the statute of limitations, the accrual date was **before** November 20, 2007. *See Halloran v. Montgomery Cnty. Dep't of Pub. Works,* 185 Md.App. 171, 182–83, 968 A.2d 1104, *cert. denied,* 409 Md. 48, 972 A.2d 861 (2009) ("[T]he [LGTCA] notice requirement operates independent of the limitations period that applies generally to the filing of suit." (Citation and internal quotation marks omitted) (first alteration in original)).

June 10, 2008 (the notice date), aside from contacting the Montgomery County Executive, who, in a letter dated February 28, 2008, encouraged the Commission to issue addresses to appellants. In a seven-month span, persuading one officeholder to write one letter—and taking no further action—does not amount to the degree of diligence that an ordinarily prudent person would have exercised.

Additionally, we reject appellants' contention that they delayed because the Commission made misleading representations to them. *See Longtin II*, 419 Md. at 469, 19 A.3d 859. According to the Amended Complaint, since November 20, 2007, the Commission has "taken different positions as to why it [was] refusing to issue" addresses to appellants. However, as noted above, the Amended Complaint does not state that appellants took any action between November 20, 2007 (the injury date), and June 10, 2008 (the notice date), aside from contacting the Montgomery County Executive. Thus, the Amended Complaint fails to explain how the Commission's different positions misled appellants or caused them to delay in sending notice to the Commission.[12]

For all the reasons discussed above, the circuit court did not err in dismissing Count One through Count Four for lack of proper notice.

## II. Count Five Through Count Eleven (Joinder of Necessary Parties)

### (A) Contentions

Appellants contend that the circuit court erred in granting the motions to dismiss Count Five through Count Eleven for failure to join necessary parties. Specifically, appellants argue that the circuit court needed to assume the truth of their

---

12. We need not consider the different positions that the Commission allegedly took **before** November 20, 2007 (the injury date), as only events **after** the injury date are relevant to show what caused appellants to delay in sending notice to the Commission. Indeed, by the Amended Complaint's own terms, on November 20, 2007, appellants knew that the Commission allegedly was refusing to issue address for appellants' properties.

allegation in the Amended Complaint that the non-party own-ers of property adjacent to Farm Road "have agreed not to contest the relief sought[.]" (Emphasis omitted). Appellants assert that this allegation establishes that the "other adjacent property owners" declined to join this case. (Emphasis omit-ted).

Appellees respond that the circuit court did not err in granting the motions to dismiss Count Five through Count Eleven for failure to join necessary parties. Specifically, appellees contend that the Amended Complaint's allegation—that other adjacent property owners have agreed not to contest the relief sought—is an "amorphous assurance" that did not bind the circuit court. Additionally, appellees argue that appellants needed to join the Montgomery County Execu-tive, who is the only one with the authority to declare Farm Road to be a public highway.

In a reply brief, appellants respond that, in the Amended Complaint, they did not seek to have Farm Road declared a public highway; rather, they sought a declaratory judgment that they have an easement to use Farm Road and the ten-foot right-of-way.

### (B) Law

C.J.P. § 3–405(a) [13] states:

(1) If declaratory relief is sought, a person who has or claims any interest which would be affected by the declara-tion, shall be made a party.

(2) Except in a class action, the declaration may not preju-dice the rights of any person not a party to the proceeding.

Maryland Rule 2–211 states:

(a) Persons to be joined. Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence

---

**13.** C.J.P. § 3–405(a) is part of the Declaratory Judgment Act, C.J.P. § 3–401 *et seq.*

(1) complete relief cannot be accorded among those already parties, or

(2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.

The court shall order that the person be made a party if not joined as required by this section. If the person should join as a plaintiff but refuses to do so, the person shall be made either a defendant or, in a proper case, an involuntary plaintiff.

(b) Reasons for Nonjoinder. A pleading asserting a claim for relief shall state the name, if known to the pleader, of a person meeting the criteria of (1) or (2) of section (a) of this Rule who is not joined and the reason the person is not joined.

■ C.J.P. § 3–405(a) and Maryland Rule 2–211 have two primary purposes: (1) "to assure that a person's rights are not adjudicated unless that person has had his [or her] 'day in court'[;] and [(2)] to prevent multiplicity of litigation by assuring a determination of the entire controversy in a single proceeding." *City of Bowie v. MIE Props., Inc.*, 398 Md. 657, 703, 922 A.2d 509 (2007) (citation and some internal quotation marks omitted). "If these objectives are met—especially if the non-joined parties are bound by the decree—the formal non-joinder of necessary parties may not be fatal." *Bodnar v. Brinsfield*, 60 Md.App. 524, 532, 483 A.2d 1290 (1984) (citation omitted).

## (C) Analysis

■ Here, we conclude that the circuit court did not err in granting the motions to dismiss Count Five through Count Eleven for failure to join necessary parties. In Count Five through Count Eleven, appellants sought a declaratory judgment that they have an easement to use Farm Road and the

ten-foot right-of-way.[14] In the Amended Complaint, appel-
lants named the Messes, Hill, and Johnson as the defendants
who own property adjacent to Farm Road. In the Amended
Complaint, appellants admitted that they had not joined ev-
eryone who owns property adjacent to Farm Road. Generally,
a trial court should dismiss a claim for declaratory judgment
that the plaintiffs have an easement to use a road where the
plaintiffs have not joined everyone who owns property adja-
cent to the road. *See* C.J.P. § 3–405(a)(1) ("If declaratory
relief is sought, a person who has or claims any interest which
would be affected by the declaration, shall be made a party.");
Md. R. 2–211(a)(2) ("[A] person . . . shall be joined as a party
. . . if in the person's absence . . . disposition of the action may
impair or impede the person's ability to protect a claimed
interest relating to the subject of the action[.]"); *Williams v.
Moore*, 215 Md. 181, 185–86, 137 A.2d 193 (1957) (The Court of
Appeals held that the trial court erred in not dismissing a
claim for declaratory judgment that the plaintiffs had an
easement to use a road where the plaintiffs had not joined
everyone who owned property adjacent to the road.).

For three reasons, we reject appellants' contention that the
trial court erred in granting the motions to dismiss given that,
in the Amended Complaint, appellants alleged that the "other
adjacent property owners have agreed not to contest the relief
sought[.]" First, with this allegation appellants fail to name
the "other adjacent property owners"; and "[a] pleading as-
serting a claim for relief shall state the name, if known to the
pleader,[15] of a" necessary party. Md. R. 2–211(b). Second,
this allegation fails to specify the number of "other adjacent
property owners[,]" their properties' locations, or even wheth-
er **all** "other adjacent property owners have agreed not to
contest the relief sought[.]" In ruling on a motion to dismiss,

---

**14.** In Count Five through Count Eleven, appellants sought neither
damages nor addresses for their properties.

**15.** By definition, if appellants knew that the "other adjacent property
owners have agreed not to contest the relief sought[,]" then appellants
knew the names of the "other adjacent property owners[.]"

although a court assumes the truth of a complaint's factual allegations, the court: (1) does not consider "bald assertions [or] conclusory statements[,]" *Forster*, 426 Md. at 604, 45 A.3d 180 (citation omitted); and (2) construes against the plaintiff "[a]ny ... uncertainty in the [complaint's factual] allegations[.]" *Shenker*, 411 Md. at 335, 983 A.2d 408 (citation omitted). Third, this allegation amounts to an attempt by appellants to waive the presence of the "other adjacent property owners[,]" and "[f]ailure to join a necessary party constitutes a defect in the proceedings that cannot be waived by the parties[.]" *LaSalle Bank, N.A. v. Reeves*, 173 Md.App. 392, 402, 919 A.2d 738 (2007) (citation and internal quotation marks omitted).

We reject appellants' contention that, under *Serv. Transp., Inc. v. Hurricane Exp., Inc.*, 185 Md.App. 25, 41, 968 A.2d 620 (2009), and *MIE Props.*, 398 Md. at 704–05, 922 A.2d 509, the circuit court erred in granting the motions to dismiss because the "other adjacent property owners" declined to join this case. In both *MIE Props.*, 398 Md. at 704, 922 A.2d 509, and *Serv. Transp.*, 185 Md.App. at 41, 968 A.2d 620, an appellate court held that a trial court did not err where: (1) a business was not joined as a party, and (2) the business knew of the case through its owner or president, who participated in the case. Specifically, in *Serv. Transp.*, 185 Md.App. at 41, 968 A.2d 620, the business's president was a defendant and had been deposed, and in *MIE Props.*, 398 Md. at 704, 922 A.2d 509, the business's owner submitted an affidavit and testified at trial. In both *MIE Props.*, 398 Md. at 703, 922 A.2d 509, and *Serv. Transp.*, 185 Md.App. at 41, 968 A.2d 620, the holdings depended on the fact that the businesses were "directly interested in [the cases] and ha[d] **knowledge** of [their] pendency, [but] refuse[d] or neglect[ed] to appear and avail themselves of their rights." (Emphasis added) (citations omitted). *MIE Props.*, 398 Md. at 703, 922 A.2d 509, and *Serv. Transp.*, 185 Md.App. at 41, 968 A.2d 620, do not apply where, as here, the record leaves unclear **who** is directly interested in the case, much less whether the directly interested people **know** of the case. Indeed, in the Amended Complaint, appel-

lants merely allege that "other adjacent property owners have agreed not to contest the relief sought[.]"

For two reasons, we reject appellants' contention that the circuit court should have denied the motions to dismiss and allowed the case to proceed to discovery—during or after which, presumably, the circuit court would revisit the issue of joinder of necessary parties. First, a trial court should resolve the issue of joinder of necessary parties as early as possible. *See S. Mgmt. Corp. v. Kevin Willes Const. Co., Inc.,* 382 Md. 524, 548 n. 14, 856 A.2d 626 (2004) ("[I]t would have been preferable to have the question of the required joinder ... squarely presented to the trial court at an earlier stage of the proceeding." (Omission in original) (citation and internal quotation marks omitted)). Second, by allowing a defendant to move to dismiss for failure to join necessary parties before filing an answer, Maryland Rule 2–322(b)(3) implies that, before discovery, a trial court may resolve the issue of joinder of necessary parties.

Although we conclude that the circuit court did not err in granting the motions to dismiss Count Five through Count Eleven, we do so only on the ground that appellants failed to join the "other adjacent property owners"; we reject appellees' contention—and the circuit court's conclusion—that appellants needed to join the Montgomery County Executive. Although only the Montgomery County Executive has the authority to "declare [a] road to be a public highway[,]" Montgomery County Code § 49–6(a), in the Amended Complaint, appellants did not seek to have Farm Road declared a public highway. Although Count Five is subtitled "Public Roads[,]" appellants sought the same relief in Count Five that they did in Count Six through Count Eleven—a declaratory judgment that they have an easement to use Farm Road and the ten-foot right-of-way.

For all the reasons discussed above, we hold that the circuit court did not err in dismissing Count Five through Count Eleven for failure to join necessary parties.

### III. Count Twelve and Count Thirteen (Statute of Limitations)

#### (A) Contentions

Appellants contend that the circuit court erred in dismissing Count Twelve and Count Thirteen as time-barred. Specifically, appellants argue that, for purposes of the statute of limitations, the accrual date was November 20, 2007, when the Commission denied Rounds's and Gaither's requests for addresses.

Appellees respond that the circuit court did not err in dismissing Count Twelve and Count Thirteen as time-barred. Specifically, appellees contend that, for purposes of the statute of limitations, the accrual date was on August 3, 2000, when the Commission approved a plat for the Dellabrooke subdivision.

#### (B) Law

A plaintiff must file a claim for wrongful interference with easement rights "within three years from the date it accrues[.]" C.J.P. § 5–101. A plaintiff must file a claim for slander of title "within one year from the date it accrues." C.J.P. § 5–105.

Under the "discovery rule," a claim accrues when "the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence. The discovery rule protects plaintiffs in a position where it was not reasonably possible to have obtained notice of the nature and cause of an injury[.]" *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131–32, 31 A.3d 212 (2011) (citations and internal quotation marks omitted). Under the discovery rule, a plaintiff need not have "actual knowledge" of the claim, *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 168, 857 A.2d 1095 (2004) (citations omitted); rather, a plaintiff need only have "inquiry notice[, or] knowledge of circumstances which would cause a reasonable person in the position of the plaintiff[ ] to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge

of the" claim. *Anne Arundel Cnty. v. Halle Dev., Inc.,* 408 Md. 539, 562, 971 A.2d 214 (2009) (citation and internal quotation marks omitted).

In *Bacon v. Arey,* 203 Md.App. 606, 660–61, 40 A.3d 435 *cert. denied,* 427 Md. 607, 50 A.3d 606 (2012), this Court held that the trial court did not err in dismissing claims regarding Farm Road as time-barred, stating that:

> [B]ased on the facts alleged in the third amended complaint, [the plaintiff] had knowledge of facts sufficient to constitute, at least, inquiry notice for purposes of the statute of limitations as of October 1, 2002, when he took title to the property. In the third amended complaint, concerning Farm Road's access to Gold Mine Road, as stated earlier, [the plaintiff] acknowledges two important dates: 1994—when the Dellabrooke subdivision was initially approved, and 2001—when Plat 21707 was recorded. By stating in the third amended complaint that the northward access of Farm Road to Gold Mine Road been "permanently cut" in 1994 and access to Gold Mine Road was prohibited in 2001, [the plaintiff], in effect, acknowledged that he "reasonably should have known" or with diligent investigation could have known at the time he purchased the property that he could not use Farm Road to access Gold Mine Road.

### (C) Analysis

Here, we conclude that the circuit court did not err in dismissing Count Twelve and Count Thirteen as time-barred. According to the Amended Complaint: (1) "[i]n or around 1994, . . . Brown . . . began developing the area around Farm Road"; and (2) "[a]s part of his development . . . Brown eliminated the northern access to Farm Road from Goldmine Road."

Although, in the Amended Complaint, appellants do not allege the date on which Brown allegedly "eliminated the northern access to Farm Road," the Amended Complaint implies that Brown's alleged elimination of northern access to Farm Road occurred sometime in or before 2003. According to the Amended Complaint: (1) "[i]n or around 2003, the

Areys purchased 69 acres of the fictional 'conservation ease-
ment' "; and (2) "the Areys, even **before** their purchase of the
69 acres, worked behind the scenes with Brown . . . to cut off
the northern access to Farm Road[.]" (Emphasis added).
Thus, we assume that Brown's alleged elimination of northern
access to Farm Road occurred sometime in or before 2003
(when the Areys allegedly bought the 69 acres).[16]

Next, we conclude that Brown's alleged elimination of north-
ern access Farm Road put appellants on inquiry notice that
their ability to access Farm Road was in danger. *See Bacon*,
203 Md.App. at 660–61, 40 A.3d 435 (This Court held that the
alleged elimination of northern access to Farm Road put the
plaintiff on inquiry notice that his ability to access Farm Road
was in danger.). Alternatively, we are satisfied that the
Commission's approval of Plat 21707 on August 3, 2000, put
appellants on inquiry notice that their ability to access Farm
Road was in danger. *See id.*[17] Essentially, after Brown's
alleged elimination of northern access to Farm Road—as well

16. Our assumption is supported by the fact that, at oral argument,
appellants conceded that Brown's alleged elimination of Farm Road
occurred before 2003. Nonetheless, at oral argument, appellants con-
tended that they lacked actual notice that their ability to access Farm
Road was in danger. Below, we conclude that, at a minimum, appel-
lants had been put on inquiry notice.

17. We reject appellants' attempt to distinguish *Bacon*, 203 Md.App. at
660–61, 40 A.3d 435 on the ground that, in *Bacon, id.*, the plaintiff
bought property adjacent to Farm Road in 2002—unlike here, where
nearly all appellants allegedly bought properties adjacent to Farm Road
before 1994, when Brown allegedly "began developing the area around
Farm Road[.]" In *Bacon, id.*, this Court's holding depended on the fact
that—independent of what was in the plaintiff's chain of title—the
plaintiff was on inquiry notice because of the alleged elimination of
northern access to Farm Road. For example, in *Bacon, id.* at 660, 40
A.3d 435 we stated: "[T]he plat is not a part of [the plaintiff]'s chain of
title. . . . [N]evertheless . . . based on the facts alleged in the . . . com-
plaint, appellant had knowledge of facts sufficient to constitute, at least,
inquiry notice[.]" (Citation omitted).

Additionally, we reject appellants' attempt to distinguish *Bacon, id.* at
660–61, 40 A.3d 435 on the ground that, here, the accrual date was
November 20, 2007, when the Commission denied Rounds's and Gaith-
er's requests for addresses. As explained above, Brown's alleged elimi-
nation of northern access to Farm Road put appellants on inquiry

as the Commission's approval of Plat 21707—appellants "should have discovered [their injury] through the exercise of due diligence." *Poole*, 423 Md. at 131, 31 A.3d 212.

Finally, we conclude that appellants did not timely file their claims for wrongful interference with easement rights (Count Twelve) or slander of title (Count Thirteen). As explained above, the accrual date was sometime in or before 2003. In June 2008, appellants sued appellees in the federal court. Thus, appellants did not file within the required three years for wrongful interference with easement rights (Count Twelve), C.J.P. § 5–101, or the required one year for slander of title (Count Thirteen). C.J.P. § 5–105.[18]

For all the reasons discussed above, we conclude that the circuit court did not err in dismissing Count Twelve and Count Thirteen as time-barred.[19]

**JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

notice that their access to Farm Road was in danger—*i.e.*, Farm Road's existence was in danger. If Farm Road's existence was in danger, so, too, was the existence of addresses for appellants' properties adjacent to Farm Road. Furthermore, we observe that—despite appellants' insistence on appeal that the crux of the Amended Complaint is the Commission's denial of addresses for appellants' properties—in none of the Amended Complaint's thirteen counts do appellants seek addresses for their properties.

18. Because we conclude that appellants did not timely file their claims in the federal court, we need not determine, for purposes of the statute of limitations, whether a claim in state court can relate back to a federal complaint that did not include the claim.

19. Because we conclude that the circuit court did not err in dismissing Count Twelve and Count Thirteen as time-barred, we need not determine whether the circuit court erred in dismissing Count Twelve and Count Thirteen because MHG and Riggs did not owe a duty to appellants, *i.e.*, we need not reach the merits of the issue presented in question IV.